IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RAMIRO GAITAN | § § | |
| VS. | § § | CA No. _____ |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | § § § | |

**PLAINTIFF'S COMPLAINT**

RAMIRO GAITAN, Plaintiff, files this Complaint asserting causes of action in law and equity for relief against Life Insurance Company of North America, Defendant.

## I.
## PARTIES

1. Plaintiff Rami Gaitan is a resident citizen of Fremont, Texas.

2. Defendant, Life Insurance Company of North America, ("LICNA"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, CT Corporation, 350 N. Paul St., Dallas, TX 75201, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

3. This action against LICNA arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and is in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

### III.
### STATEMENT OF FACTS

6. Mr. Gaitan grew up in a close family. When he 11 years old, he began to skip school to help his father at work. He never went to high school. After he turned 17, he joined the Army for a year and a half. He was hired by Halliburton Energy Services ("Halliburton") in January 1987 as an Equipment Operator. A year later, he got his GED. In 2002, Halliburton promoted him to Supervisor.

7. Working as a Supervisor was very demanding and required very heavy work. He worked on fracking jobs where the main tool was a 40 pound sledgehammer. He picked up pieces of iron weighing 125 pounds, often without help from anyone else. He offloaded trucks, which required constant driving on very rough roads. It was not unusual for the typical work day to last 16 or 17 hours.

8. Mr. Gaitan enrolled in Halliburton's employee welfare benefit Plan that included benefits for long term disability (LTD). The Plan was part of Halliburton's Group Insurance Policy issued by LICNA. It provided income protection if an employee was disabled as a result of injury or sickness. Mr. Gaitan was an eligible employee.

9. Halliburton was the Plan Sponsor and Plan Administrator.

10. LICNA was the Insurer of the Plan.

11. Mr. Gaitan first began to suffer from major back pain in 2004 due to the heavy lifting that was a requirement of his job. He would get a stabbing pain in his left buttock so intense that it affected his concentration at work. He took many over the counter pain medications just to get through the work day.

12. On August 13, 2007, Mr, Gaitan underwent a laminectomy and lumbar fusion of the L4-L5 spinal discs. His doctors prescribed Hydrocodone, which he still takes to this day.

13. The following year, Halliburton promoted Mr. Gaitan to Driver-Trainer. His job was to teach new employees how to drive 18-wheeler trucks. This meant constantly getting in and out of large trucks, driving, going to oil fields, and applying a chemical into fracking tanks so that it could be pumped. The containers weighed 75 pounds. Mr. Gaitan had to lift the containers to the top of the frack tank, walk up a step ladder, carry the box across the tank, then apply the chemical to each tank. Despite his doctor warning not to lift anything over 10 pounds, he kept doing whatever was needed to work to the best of his ability.

14. By 2015, Mr. Gaitan suffered from weakness in the left side of his body, going from his left buttock down to his left leg to the top of his foot. He was no longer able to walk extended distances, and his leg would give out after 15 steps.

15. Mr. Gaitan stopped working in March 2015 and applied for LTD benefits. LICNA initially denied his claim, stating that he had no functional limitations and that his medications, which included Hydrocodone, had no disabling side effects.

16. In October 2015, LICNA employee Aeon Munkrittick reviewed Mr. Gaitan's medication records, which included Ambien and Tylenol #4. Because Mr. Gaitan's

job required a Commercial Drivers' License, he could not work under the influence of these medications.

17. LICNA eventually approved Mr. Gaitan's LTD claim, although it never sent any written confirmation of its approval.

18. In December 2015, Mr. Gaitan was approved for Social Security Disability benefits. He notified LICNA and promptly reimbursed it for the overpayment on his claim.

19. In February 2016, Dr. John Masciale noted that Mr. Gaitan suffered from post-laminectomy/posterior fusion with chronic persistent lower back pain and left lower extremity radiculitis. He determined that Mr. Gaitan was disabled from all employment.

20. On May 18, 2016, Mr. Gaitan had a phone conference with LICNA employee Latonya Puckett. He explained that he could not work because of the strong medications that affected his ability to drive pursuant to DOL requirements. Mr. Gaitan also rejected LICNA's offer of a discounted settlement of his LTD claim.

21. In June 2016, Dr. Masciale noted that Mr. Gaitan had begun to use a TENS unit to manage his constant pain.

22. In January 2017, Mr. Gaitan submitted a Disability Questionnaire to LICNA in which he explained that he could not sit, stand, or walk for extended periods and took pain medications on a daily basis. The pain was getting worse.

23. On March 28, 2017, Mr. Gaitan had a phone conference with LICNA employee Angela Simonyan. He explained that his leg foot and let would get numb and swollen. He could not walk on stairs or drive. He could not sit for longer than 10

minutes before needing to reposition himself. After standing for 5 minutes, he needed to use a cane or walker.

24. In April 2017, Dr. Masciale submitted an Attending Physician Statement to LICNA in which he noted that Mr. Gaitan could not lift, push, or pull anything more than 5-10 pounds, could not sit, stand, or walk for prolonged periods, and was disabled from his customary occupation. Dr. Masciale warned that "repetitive or prolonged activity may cause an increase in pain".

25. In May 2017, LICNA retained a Dennis Korpman to review some of Mr. Gaitan's medical records. Dr. Korpman concluded that there was no evidence that Mr. Gaitan had problems with sitting, standing, or walking. He also concluded that Mr. Gaitan had absolutely no physical restrictions or limitations.

26. On June 12, 2017, LICNA paid a Dr. Osama Nahas to perform an Insurance Medical Examination ("IME") of Mr. Gaitan. Mr. Gaitan explained to Dr. Nahas that he could not walk more than short distances, could not stand more than 10-15 minutes, could not sit more than 20 minutes, and could not drive for anything more than short distances. However, Dr. Nahas concluded that Mr. Gaitan could frequently sit, frequently lift 20 pounds, and occasionally stand and walk.

27. Despite representing that he conducted an IME, Dr. Nahas never actually physically examined Mr. Gaitan.

28. LICNA terminated Mr. Gaitan's claim on July 20, 2017. In doing so, it relied on the IME by Dr. Nahas and the medical record review by Dr. Korpman. Dr. Korpman's "review" was based on a small portion of the medical records and contained factual

errors on even the most basic of details. LICNA also relied on an occupational review by its employee Melissa Mendez.

29. Mr. Gaitan appealed LICNA's termination of his LTD claim on September 18, 2017. In his appeal, he explained that Dr. Nahas never physically examined him, only asked questions and had him complete a questionnaire. Mr. Gaitan advised LICNA that he was willing to undergo a Functional Capacity Exam ("FCE") to prove that he was disabled.

30. LICNA never responded to Mr. Gaitan's offer for an FCE. Instead, it retained a Uchechukwu Elendu to review 74 pages of Mr. Gaitan's medical records.

31. Dr. Elendu noted her concern that Dr. Nahas's IME report did not contain any evidence of a physical exam. Regardless, she concluded that Mr. Gaitan could sit for 7 hours a day, walk and stand for 3 hours a day, and drive for 2 hours a day. She did not explain how she arrived at these random numbers.

32. LICNA denied Mr. Gaitan's appeal on January 10, 2018.

33. Mr. Gaitan submitted a second appeal in May 2018. Along with the appeal, he provided updated MRIs showing herniated and bulging discs in his back. He reiterated that he was in constant pain and could not drive for 2 hours a day due to his pain medications.

34. LICNA then retained a Dr. Mahdy Flores to review less than 100 pages of medical records. Dr. Flores relied on Dr. Nahas' IME to prove that Mr. Gaitan could work in a light duty job. She concluded that Mr. Gaitan could sit for 8 hours a day, stand for 4 hours a day, and lift 20 pounds occasionally. Just like Dr. Elendu, he did not

explain how he arrived at these random numbers. Dr. Flores determined that Mr. Gaitan had absolutely no side effects from his medications.

35. LICNA denied Mr. Gaitan's second appeal on August 30, 2018.

36. In denying Mr. Gaitan's appeal, LICNA relied on several medical record reviewers. One of those reviewers was Dr. Dennis Korpman. Dr. Korpman holds himself out as a licensed physician, but his medical license in Florida has expired. There is no evidence that he has staff privileges at any hospitals, sees patients, teaches, researches, or actually practices medicine.

37. Dr. Korpman's May 16, 2017 report starts with a glaring mistake by grossly misstating Mr. Gaitan's age, making it unclear if he mixed up files. He hesitated to provide any opinion at all, as the file "needs occupational medicine review" because Mr. Gaitan's orthopedist provided restrictions and limitations. However, he summarily concluded that Mr. Gaitan had no side effects from his medications and had absolutely no functional limitations. No other medical reviewers take such an extreme position. His opinions should be discarded.

38. Another medical reviewer that LICNA used was Dr. Osama Nahas. Dr. Nahas holds himself out as a licensed physician with a Texas medical license. There is no evidence that he has staff privileges at any hospitals. He has not reported any criminal history to the Texas Medical Board. His silence is incriminating.

39. Dr. Nahas was paid by Network Medical Review ("NMR") to conduct an IME of Mr. Gaitan on June 12, 2017. Any reasonable interpretation of an IME surely includes an actual physician examination. In Dr. Nahas's report, he clearly indicated that he performed a physical examination:

> A2. Work restrictions and limitations are medically necessary. These are based on the claimants' report, **my physical examination** including the functional assessment.

40. It was just one of Dr. Nahas's many lies. Dr. Nahas never actually did a physical examination. LICNA's own medical record reviewer, Dr. Elendu, voiced the same concern when she noted that Dr. Nahas's IME report had no evidence of a physical exam.

41. Perhaps Dr. Nahas's mind was on more pressing matters. For instance, he was indicted in May 2017 on two counts of Medicare fraud in excess of $200,000. Dr. Nahas has a long history with 'Jerry' Jackson, his employee at Crosspoint Medical Clinic. From 2009 to 2012, both Dr. Nahas and Mr. Jackson were accused of defrauding Medicaid. The first felony charge was for a scheme to give Medicaid patients an alleged service or product while not under the direct supervision of a physician. The second felony charge was for making false statements.

42. Although the State of Texas dropped those charges, Dr. Nahas has yet again run afoul of the law. The FBI raided his office in June 2018. He has been charged with Medicaid fraud yet again and is set for trial later this year. Given his many legal problems and propensity to lie, his opinions in this claim are worthless.

43. Another medical reviewer that LICNA retained in this claim is Uchechukwu Elendu. Dr. Elendu holds herself out as a licensed physician., but there is no evidence that she has staff privileges at any hospitals. Her review was based on only 74 pages of records. She did express her concern that Dr. Nahas did not actually perform a physical examination of Mr. Gaitan. Her assumptions that Mr. Gaitan could sit for 7 hours a day, walk and stand for 3 hours a day, and drive for

2 hours a day are wrong. They were not based on physical evidence or on a physical examination. Mr. Gaitan has been unable to sit for 7 hours a day since at least 2007. He cannot sit, stand, or walk for more than 1 hour without pain. He cannot work in a sedentary occupation. Dr. Elendu's opinions are only as good as the information provided to her. Without information from Mr. Gaitan, her opinions are of very limited value.

44. LICNA also retained a Dr. Mahdy Flores to review some medical records in this claim. Dr. Flores is not licensed to practice medicine in Texas. There is no evidence that he has staff privileges at any hospitals. The only evidence that he practices medicine comes from complaints from his patients. For instance, one patient noted on October 7, 2017 that Dr. Flores "does work reviews for workers comp to make sure they deny all your meds". A more recent patient noted in May 2018 that Dr. Flores works for insurance companies "to deny any and all claims[1]". A third patient thought Dr. Flores should be reported to the medical board because he only worked for disability insurance companies, not his patients.

45. LICNA's use of these medical record reviewers, among others, reveals its underlying motive to terminate Mr. Gaitan's claim, no matter the evidence. Those medical record reviewers have routinely discounted or ignored Mr. Gaitan's complaints of pain and fatigue. They have ignored the side effects of his pain medications, which prevent him from driving for extended periods. They have ignored how long he can sit, stand, and walk. In doing so, they imply that he is

---

[1] https://www.vitals.com/doctors/Dr_Mahdy_Flores.html

9

either exaggerating his symptoms or outright lying about them. On information and belief, LICNA selected these medical record reviewers to review Mr. Gaitan's claim for that very purpose. This pattern of conduct evidences a biased approach and treatment of LICNA's disability claims, including this one.

46. On February 25, 2019, Mr. Gaitan submitted additional evidence in support of his claim. Among other things, he provided evidence relating to LICNA's use of biased and unqualified medical record reviewers, additional medical records documenting the disabling nature of his back pain, and evidence of LICNA's reliance on improper vocational studies in assessing Mr. Gaitan's ability to work in other occupations. The additional evidence was provided pursuant to Fifth Circuit case authority that obligated LICNA to review the additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). He requested that LICNA review those records pursuant to its legal obligation and re-evaluate his claim.

47. The evidence that Mr. Gaitan sent in February 2019 was submitted before filing this lawsuit and in a manner that gave LICNA a fair opportunity to consider it.

48. Instead, on March 8, 2019, A.J. Popoff of LICNA advised Mr. Gaitan that it would not review the additional materials because he had "exhausted all administrative levels of appeals". Mr. Popoff did not acknowledge LICNA's ongoing obligation to

review the additional evidence. However, he admitted that the documents would be added to the claim file.

49.  Having exhausted his administrative remedies, Ramiro Gaitan brings this action to recover the LTD benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

50.  The Halliburton Health and Welfare Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Halliburton Energy Services is the plan sponsor and Plan Administrator. LICNA is the insurer and Claim Administrator under the Plan.

51.  As Plan fiduciaries, LICNA and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner.

52.  LICNA's adjustment of the Gaitan claim was instead biased and outcome oriented. This was partly reflected by its denial of the Gaitan claim, even after being presented with evidence of his disability. It was also reflected in LICNA's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively or competently review his claim.

53.  LICNA's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

54.  LICNA's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which

LICNA based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against LICNA and the Plan and in favor of coverage for Gaitan.

55. LICNA's denial was made without substantial supporting evidence. Its decision to terminate the Gaitan claim was instead based upon rank speculation and guesswork. LICNA's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

56. At all material times, LICNA acted on behalf of the Plan and in its own capacity as the Insurer and as Claims Administrator.

57. LICNA's termination of the Gaitan claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Gaitan to the LTD policy benefits to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Mr. Gaitan now sues.

## V.
## STANDARD OF REVIEW

58. The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

59. The Plan or Policy may contain a discretionary clause or language LICNA may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. LICNA's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

60. If discretion applies, the Court should afford LICNA less deference in light of its financial conflict of interest. LICNA's conflict of interest is both structural and

actual. Its structural conflict results from its dual role as the adjudicator of Gaitan's claim and as the potential payor of that claim.

61. LICNA's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. LICNA's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

62. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other LICNA policyholders and claimants.

63. In light of its financial conflict, LICNA should be given little or no discretion in its claims decision.

64. Alternatively, the standard of review of this claim should be *de novo,* affording LICNA no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

65. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. The LICNA Policy was last amended on January 1, 2017, making it subject to the Texas discretionary clause ban. Accordingly, review of the Gaitan claim and LICNA's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

66. Gaitan requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

67. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Gaitan thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to him, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

68. Gaitan seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Ramiro Gaitan, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant Life Insurance Company of North America, and issue judgment against it as follows:

A. Pay to Mr. Gaitan all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B.  Pay all reasonable attorney's fees incurred and to be incurred by Mr. Gaitan in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C.  All such other relief, whether at law or in equity, to which Mr. Gaitan may show himself justly entitled.

Respectfully submitted,

By:_____
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF